UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOE McCAULEY, | ) |
| Plaintiff, | ) No. 3:11-cv-00361 |
| | ) Judge Haynes |
| v. | ) |
| INNOCENTES SATOR, M.D., DESIREE ANDREWS, HEALTH SERVICE ADMINISTRATOR, R.M.S.I., | ) |
| Defendants. | ) |

# MEMORANDUM

Plaintiff, Joe McCauley, an inmate at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 against the Defendants Innocentes Sator and Desiree Andrews, in their individual and official capacities. Plaintiff's claims are that the Defendants acted with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment of the United States Constitution. Plaintiff's specific claims are that the Defendants failed to consult with his conservator and failed to refer him to a surgeon. Plaintiff alleges that these failures caused him to suffer pain from his alleged injuries. Plaintiff seeks compensatory and punitive damages for his pain.[1]

Before the Court is Defendants' motion for summary judgment, contending, in essence: (1) that Andrews was not deliberately indifferent to Plaintiff's medical needs because, as a non-

---

[1] In his complaint, Plaintiff also sought injunctive relief for the Defendants to send Plaintiff to surgery to remove paperclips from his stomach (Docket Entry No. 1 at 6) and moved for preliminary injunction. (Docket Entry No. 3). This relief was deemed moot by the Court, as Plaintiff received the requested surgery in May 2011. (Docket Entry Nos. 27 and 29).

-1-

medical professional, she could rely on the medical professionals' treatment of Plaintiff; (2) that Plaintiff lacks proof to establish the subjective component of his Eighth Amendment claim because the record shows that Plaintiff received the necessary treatment in a timely manner; and (3) that Plaintiff has failed to state official-capacity claims against Andrews and Sator as Plaintiff has failed to allege that any policies, customs, or practices caused his injuries. Plaintiff has not filed a response to Defendants' motion for summary judgment.

For the reasons set forth below, the Court concludes that Defendants' motion for summary judgment should be granted.

### A. Findings of Fact[2]

Plaintiff, Joe McCauley, an inmate at Riverbend Maximum Security Institution ("RMSI"), has been diagnosed with Schizoaffective Disorder and Personality Disorder, a psychiatric condition, and, as a result, at times engages in self-mutilation. (Docket Entry No. 39-3, Sator Affidavit, at ¶¶ 6, 11-12).

Plaintiff alleges that between March and May 2009, while incarcerated, he underwent surgery to remove paperclips that he had placed in his stomach while under a psychiatric disorder. (Docket Entry No. 1, Complaint, at ¶ 4). After the surgery, Plaintiff believed that his

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Defendants filed contemporaneously with their motion for summary judgment a Statement of Undisputed Facts and supporting documentation, (Docket Entry No. 39-4), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendants' Statement of Undisputed Facts. Accordingly, Defendants' proffered statement of facts is undisputed for purposes of motion for summary judgment. Local Rule 56.01(g).

stomach muscles did not heal properly. Id. at ¶ 5. Yet, there is not any mention of a 2009 surgery in his medical records, neither from RMSI nor from Lois Deberry Special Needs Facility. (Docket Entry No. 39-3 at ¶ 7; Docket Entry No. 39-2, Andrews Affidavit at ¶ 12).

On November 2009, the Tennessee Department of Corrections filed a petition in state court for appointment of a conservator for the Plaintiff. (Docket Entry No. 5, Plaintiff Declaration, attachment thereto, Exhibit A). The Department of Corrections submitted the testimony of two physicians who opined that Plaintiff was incapable of "making rational decisions regarding his mental and medical treatment and [was] [unable] to make such decisions in the future." (Docket Entry No. 5, Exhibit B at 8).

On January 26, 2010, the Seventh Circuit Court for Davidson County, Tennessee, granted this petition and entered an order appointing a conservator for Plaintiff, finding that "there is sufficient medical proof in the record . . . that the Respondent [McCauley] is a disabled person within the meaning of Tennessee Code Annotated Section 34-1-101(7) and incapable of managing his own affairs." (Docket Entry No. 5, Exhibit B at 9). The state court further opined that "the nature and extent of the Respondent's disability are such that the Respondent cannot give informed consent to medical and mental examinations and treatment and requires a Conservator to give such consent." (Docket Entry No. 5, Exhibit B at 9-10).

On an unidentified date in 2010, Plaintiff alleges that "while not in his right mental function," he inserted three additional paperclips into his stomach, "thinking this would make them [the Defendants] fix his stomach." (Docket Entry No. 4 at 2). On February 22, 2010, after seeking medical attention for the pain caused by the paperclips, Plaintiff refused a surgical consultation regarding the removal of the paperclips. (Docket Entry No. 5 at 2; Exhibit C at 15;

-3-

Exhibit D at 16). Plaintiff states that "[b]ecause of [his] psychiatric medical disorder[,] his mental function [wa]s not working right when he refuse[d] medical treatment and [he] doesn't understand the severity of his actions because he does not understand the severity of his mental condition." (Docket Entry No. 1 at ¶ 13). Later, after Plaintiff regained his mental functions and again sought medical attention for the paperclips, Defendant Andrews, a Health Service Administrator at RMSI, advised Plaintiff: "On February 22, 2010[,] you refused your outside surgical consult in regards to the paperclips." (Docket Entry No. 5, Exhibit C at 15).

Plaintiff alleges that the paperclips caused him pain on a daily basis and that he feared injury to his organs. (Docket Entry No. 1 at ¶ 14). Plaintiff alleges that the Defendants refused to allow Plaintiff to receive treatment for the paperclips, thereby causing Plaintiff to suffer. Id. Further, Plaintiff alleges that the Defendants did not contact Plaintiff's conservator regarding his condition. Id. at ¶ 16. According to the Plaintiff, the state court found him incapable of making decisions as to his medical treatment and thus, the Defendants should not be permitted to allow Plaintiff to refuse medical treatment. Id.

Plaintiff's medical records reflect that between January 2010 and August 2011, when Plaintiff was at the Lois DeBerry Special Needs Facility, Plaintiff was seen: (1) 27 times by Sator, who conducted eight chart reviews; (2) eight times by a nurse practitioner; and (3) 142 times at sick call. (Docket Entry No. 39-2, Andrews Affidavit, at ¶ 7, attachment thereto, Exhibit A). During this period, Plaintiff's conservator was contacted 12 times. Id. at ¶ 8, attachment thereto, Exhibit A. Mental Health admitted Plaintiff to the infirmary on January 14, 2011 and April 18, 2011. Id. at ¶ 9. After the second admission, Plaintiff was transferred to Lois Deberry Special Needs Facility, where he remained until returning to RMSI on May 5, 2011. Id. Neither

-4-

Case 3:11-cv-00361 Document 46 Filed 06/20/12 Page 4 of 14 PageID #: 154

Sator nor Andrews has any authority at the Lois Deberry Special Needs Facility. Id. at ¶ 13.

During his meeting with Plaintiff, Sator ordered x-rays to determine the location of the paperclips to see whether the paperclips posed sufficient danger to the Plaintiff to require surgery. (Docket Entry No. 39-3 at ¶ 9). Sator concluded that the paperclips were trapped in the abdominal wall, not inside the stomach. Id. Because the paperclips did not endanger the other organs, Sator advised against surgery. Id. at ¶ 10. In his affidavit, Sator explains:

> The abdomen and the stomach are two separate organs. The abdomen is that part of the body lying between the thorax and the pelvis, and containing the abdominal cavity and viscera. The stomach is part of the abdomen's viscera. Because the paperclips were contained in the abdominal wall, they were not in McCauley's stomach and the paperclips were not moving around and endangering other organs as McCauley alleges. I did not recommend surgery and I explained this to McCauley.

Id. Andrews does not have any authority over Sator's decisions regarding Plaintiff's treatment. (Docket Entry No. 39-4, Defendants' Statement of Undisputed Facts, at ¶ B).

On May 19, 2011, Plaintiff underwent an emergency surgery at Vanderbilt's Emergency Department because of continued self-mutilation. (Docket Entry No. 39-3, Sator Affidavit, at ¶¶ 8, 11). During this emergency procedure, the surgeon removed the paperclips from Plaintiff's abdomen. Id. at ¶ 8. On August 27, 2011, Plaintiff underwent yet another emergency surgery after having torn open his previous incision in an attempt to pull out his intestines. (Docket Entry No. 39-4 at ¶ Q). Plaintiff was discharged to the Lois DeBerry Special Needs Facility on August 29, 2011, where he currently remains under psychiatric care. (Docket Entry No. 39-2, Andrews Affidavit, at ¶¶ 10, 11).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp.</u>, 477 U.S. 317, 326 (1986). Accord, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Liberty Lobby</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if 'the pleadings, Depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P.56(c). By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp.</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for

additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A

-7-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 7 of 14 PageID #: 157

court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting <u>Liberty Lobby</u>).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \*  \*  \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

-8-

Case 3:11-cv-00361  Document 46  Filed 06/20/12  Page 8 of 14 PageID #: 158

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon, 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

-9-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 9 of 14 PageID #: 159

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

To prove a violation of his Eighth Amendment constitutional rights resulting from a denial of adequate medical care, Plaintiff must submit evidence that Defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994); Estelle, 429 U.S. at 105-06.

An Eighth Amendment claim of denial of medical care has both an objective and a

subjective component. The objective component requires that the Plaintiff's medical needs were sufficiently serious. See Wilson v. Seiter, 501 U.S. 294 (1991). The subjective component requires allegations of fact that, "'if true, would show that the [Defendants] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and . . . then disregarded the risk.'" Dotson v. Correctional Medical Services, 584 F. Supp. 2d 1063, 1067 (W.D. Tenn. 2008) (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)), aff'd, sub nom Dotson v. Phillips, 385 Fed.Appx. 468 (6th Cir. 2010).

Complaints of malpractice or allegations of negligence are insufficient to entitle a Plaintiff to relief. Estelle, 429 U.S. at 105-106. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. Id. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, for a viable claim for the denial of medical care, Plaintiff must allege that his health suffered as a consequence of such alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

As a health service administrator, Defendant Andrews may rely on the judgment of medical professionals. Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008) (holding prison officials "were entitled to rely upon the medical treatment of CMS nurses once they obtained medical care for [the prisoner]."); Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [the defendant] was entitled to defer to the judgment of jail health

-11-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 11 of 14 PageID #: 161

professionals as long as he did not ignore the plaintiff."); Johnson v. Doughty, 433 F.3d 1001, 1012 (7th Cir. 2006) ("A nonmedical prison official . . . cannot be held 'deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'"); Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

Here, Andrews manages and administers the clinic, but lacks authority over Sator's decisions regarding medical treatment. Andrews knew Plaintiff was under the care of medical professionals; thus, she relied on the medical professionals to provide adequate medical service and to contact the conservator when medically necessary. Plaintiff was seen 27 times by Sator, eight times by a nurse practitioner, and 112 times at sick call. Based upon the undisputed facts, the Court concludes that Andrews was able to rely on the medical records and medical treatment provided by RMSI's medical staff and that Andrews's position as a nonmedical official precludes the possibility that she was deliberately indifferent to Plaintiff's medical needs.

As to Sator and the other medical professionals' alleged failure to provide adequate and timely medical assistance, Plaintiff's claim lacks evidentiary support. The record shows that Plaintiff was seen 27 times by Sator, who conducted eight chart reviews; eight times by a nurse practitioner; and 142 times at sick call. Mental health providers admitted Plaintiff to the infirmary twice in 2011. Where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials. Westlake, 537 F.2d at 860 n.5.

As to Plaintiff's claim that Sator and the medical staff failed to refer Plaintiff to a surgeon

-12-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 12 of 14 PageID #: 162

when Plaintiff believed they should have, Plaintiff's difference of opinion regarding Sator's diagnosis or treatment does not rise to the level of an Eighth Amendment violation. Estelle, 429 U.S. at 107. Here, Sator relied on x-rays showing that the paperclips were trapped in the abdominal wall when concluding that Plaintiff's organs were not endangered and thus that surgery was not medically necessary. When surgery was otherwise medically necessary on May 19, 2011 and August 27, 2011, Plaintiff was referred to a surgeon.

As to the claim that Andrews and Sator failed to consult with Plaintiff's conservator, this allegation also lacks evidentiary support. While Plaintiff asserts that the medical professionals did not communicate with his conservator, Andrews's affidavit reflects that medical personnel contacted Plaintiff's conservator 12 times between January 2010 and the present.

Finally, the Court notes that Plaintiff sued Andrews and Sator in their official capacities, but does not identify their employer. The record is unclear whether Andrews and Sator are employees of the RMSI or if RMSI contracts its medical services with a private entity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).

"It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993); Johnson v. Karnes, 398 F.3d 868, 876 (6th Cir. 2004) ("The Supreme Court has explicitly held that § 1983 liability applies to physicians who are not formally employed by a state, but who instead serve prison populations as government contractors.") (citing West v. Atkins, 487 U.S. 42, 54-57

-13-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 13 of 14 PageID #: 163

(1988)). Yet, "respondeat superior is not a valid theory of liability for private contractors employed by a state." Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012). Thus, "[l]ike a municipality, a government contractor cannot be held liable on a *respondeat superior* theory . . . however . . . a private contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality." Johnson, 398 F.3d at 877 (citation omitted) (emphasis in original).

Here, Plaintiff neither identifies Andrews's or Sator's employer nor alleges that a "policy or custom" of this entity caused his injury. Plaintiff has not presented any evidence that his alleged injury was the result of an actual policy or custom. Id. Moreover, to the extent that Andrews and Sator are RMSI employees, "the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees in their official capacities." Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989)). Accordingly, the Court concludes that Plaintiff's claims against Andrews and Sator in their official capacities should be dismissed.

For these reasons, the Court concludes that the Defendants' motion for summary judgment should be granted.

ENTERED this the 20th day of June, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge

-14-

Case 3:11-cv-00361   Document 46   Filed 06/20/12   Page 14 of 14 PageID #: 164